UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDRE CALIX, )<br>   *Petitioner* )<br>      v. )<br>)<br>T. PULLEN, Warden of Federal )<br>Correctional Institution at Danbury, )<br>   *Respondent*. ) | No. 3:22-cv-00574 (KAD)<br><br><br>JANUARY 26, 2023 |

**MEMORANDUM OF DECISION**
**RE: RESPONDENT'S MOTION TO DISMISS, ECF No. 17; PETITIONER'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION, ECF No. 11; and PETITIONER'S MOTION MAKING MULTIPLE REQUESTS, ECF No. 18.**

On April 21, 2022, Andre Calix ("Petitioner"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging conditions of confinement at Federal Correctional Institution Danbury ("FCI Danbury"). The Petitioner has since filed other motions making additional requests. On July 29, 2022, the Warden of FCI Danbury ("Respondent") filed a motion to dismiss the § 2241 petition. For the reasons set forth below, the Respondent's motion to dismiss is GRANTED, and the Petitioner's motions are DENIED.

**Procedural History and Background**

In his petition, Petitioner raises two issues. First, he contends that Respondent has unlawfully lowered the prisoner spending limit at the FCI Danbury commissary. *See* Petition, ECF No. 1, at 1–2. Second, he asserts that Respondent has unlawfully failed to implement video visitation protocols at the men's compound of FCI Danbury. *See id.*

With respect to his commissary spending limit claim, Petitioner asserts that the Federal Bureau of Prisons (BOP) has established a prisoner spending limit of $360 per month at commissaries within federal prisons. *See id.* at 2. Petitioner appears to concede (and the Court's review of relevant BOP policy confirms) that, as Warden, Respondent had authority to implement

a lower commissary spending limit at FCI Danbury. *See id.*; *see also* BOP Program Statement 4500.11 *Trust Fund/Deposit Fund Manual*, at p. 29, Chapter 3, Section 2(a), accessible at https://www.bop.gov/policy/progstat/4500_011.pdf. Respondent exercised this authority and lowered the commissary spending limit at FCI Danbury to just $50 per week (a limit of approximately $217 per month). *See* Petition at 3. Although Respondent invoked concerns related to the COVID-19 pandemic to justify the $50 weekly spend limit, Petitioner asserts that Respondent's decision-making was arbitrary. *See id.* According to Petitioner, Respondent's allegedly arbitrary decision to limit commissary spending created "an unjust disparity among the [BOP] inmate population." *Id.*

Petitioner also notes that Respondent has sanctioned some units within FCI Danbury by limiting their commissary privileges to the purchase of stamps and hygiene items. *See id.* According to Petitioner, this is a violation of constitutional due process because BOP prisoners cannot be sanctioned without a disciplinary hearing officer having found them to be in violation of a BOP regulation. *See id.*

With respect to his video visitation claim, Petitioner notes that the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") permits BOP wardens to authorize inmate visitations through video teleconferencing. *Id.* The Petitioner further asserts that such video visitation has been made available to prisoners in the women's compounds of FCI Danbury, but not to prisoners in the men's compound of FCI Danbury. *Id.* at 4. Petitioner asserts this differential access to remote visitation opportunities is an "arbitrary and discriminatory application of the law." *Id.*

On May 20, 2022, Petitioner filed an Emergency Motion for Preliminary Injunction. *See* ECF No. 11. On June 28, 2022, the Court filed a show cause Order requiring Respondent to respond to the habeas petition on or before July 29, 2022. *See* ECF No. 13 at 1. On July 29, 2022,

the Respondent complied with the show cause Order and filed a consolidated response and Motion to Dismiss. *See* ECF No. 17.

On August 11, 2022, Petitioner filed a Motion for Leave to Supplement Petition, Discovery, Temporary Restraining Order, Preliminary Injunction, and Default Judgment. *See* ECF No. 18, Pet. Second Emergency Motion ("SEM"). And, on August 18, 2022, Petitioner filed a response to the Respondent's motion to dismiss. *See* ECF No. 19, Pet. Res.

**Discussion**

*Motion to Dismiss*

<u>Legal Standard</u>

The Court "reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12 (b)(6)." *Spiegelmann v Erfe*, No. 3:17-cv-2069 (VLB), 2018 WL 1582549 at *1 (D. Conn. Mar. 29, 2018) (citing *Purdy v. Bennett*, 214 F. Supp. 2d 348, 353 (S.D.N.Y. 2002)). To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* Nevertheless, when reviewing a motion to dismiss, the court must accept

well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

Section 2241 permits prisoners who are being held "in custody in violation of the Constitution or laws or treaties of the United States" to file a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). And the Second Circuit has long-permitted federal prisoners to challenge conditions of their penal confinement through a § 2241 petition. *See Ilina v. Zickefoose*, 591 F. Supp. 2d 145, 150 (D. Conn. 2008). In seeking dismissal of the current § 2241 petition, Respondent advances three arguments: (1) the Petitioner has not alleged facts establishing standing to bring claims; (2) the Petitioner has failed to exhaust administrative remedies; and (3) the Petitioner has failed to state claims upon which relief may be granted. *See* Res. Mem., ECF No. 17-1, at 3, 4, 6.

<u>Discussion</u>

*Standing*

Article III of the U.S. Constitution authorizes federal courts to exercise jurisdiction over actual "cases" and "controversies." U.S. CONST. ART. III, § 2. "A litigant who invokes federal jurisdiction therefore must demonstrate standing to sue, a requirement rooted in the traditional understanding of what it means to assert a case or controversy under Article III." *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (quotation marks and citation omitted). And, to establish such standing, a litigant must, *inter alia*, allege an injury that is "actual or imminent" as opposed to one that is "conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Respondent contends that Petitioner does not have standing to assert these claims because his petition does not articulate any injury, actual or imminent, arising from the challenged commissary spending limitations or the non-availability of video visitation opportunities in the

men's compound of FCI Danbury. *See* Res. Mem. at 3–4. This argument has merit. Petitioner never explicitly asserts that FCI Danbury's challenged policies ever prevented him from making a commissary purchase or conducting a visitation with friends or family. *See* Petition at 1–5. Indeed, he describes no personal impact on him at all. Absent such allegations, the Petitioner has not adequately alleged any injury which would afford him standing. The Court has only Petitioner's alleged abstract disagreement with the policies. *See Silva v. Williams*, 3:18-cv-1770 (MPS), 2019 WL 859267 at *2 (D. Conn. Feb. 22, 2019) (where an inability to discern "whether the plaintiff is seeking to bring [a] case only on behalf of other inmates at FCI Danbury or as a result of his own injury" warranted dismissal of a claim challenging commissary pricing).

In response, the Petitioner asserts that documentary evidence attached to his petition "embrace[s] specific facts necessary to support Petitioner's" standing. *See* Pet. Mem., ECF No. 19, at 4. But Petitioner has not actually attached any records to his habeas petition. *See* Petition.[1] And, even in his response, Petitioner does not contend that FCI Danbury's challenged policies ever prevented him from making commissary purchases or receiving visitations. Petitioner merely emphasizes that he is among the class of persons subject to the policies he challenges. *See id.* at 4–5. Thus, the Court finds that Petitioner has failed to allege facts establishing his standing to bring claims.

*Exhaustion of Administrative Remedies*

The Respondent next argues that Petitioner has failed to exhaust administrative remedies prior to filing his habeas petition, as required by common law and the Prison Litigation Reform Act ("PLRA.") *See* Res. Mem. at 4–6. In support of this argument, Respondent attaches BOP

---

[1] Petitioner has sought to incorporate by reference exhibits that are attached to a petition/complaint filed in another case that he is currently litigating in the District of Connecticut, *Calix v. Pullen*, 3:22-cv-484 (KAD). *See* Petition at 5. Having reviewed those exhibits, the Court finds that they are not directly related to either of the claims brought in this case.

5

records indicating that Petitioner never submitted a formal administrative request related to commissary spending limits or video visitation. *See generally,* Res. Mem. Ex. A, ECF No. 17-3.

Federal prisoners are generally required to exhaust their administrative remedies prior to challenging conditions of their confinement through the filing of a § 2241 petition. *See Carmona v. U.S. Bureau of Prison*, 243 F.3d 629, 634 (2d Cir. 2001) (case law predating the enactment of the PLRA requires federal prisoners to exhaust administrative remedies prior to filing a petition for habeas relief); *see also Dimartino v. Sage*, 21-cv-498 (KAD), 2022 WL 124308 at *3–4 (D. Conn. Jan. 13, 2022) (broadly reviewing Second Circuit case law to conclude that the PLRA applies to § 2241 petitions challenging a prisoner's conditions of confinement). But exhaustion is not required when administrative remedies are, effectively, unavailable to an inmate. *See Ross v. Blake*, 578 U.S. 632, 643 (2016) (interpreting the PLRA); *see also Carmona*, 243 F.3d at 634 (common law exhaustion requirements excused when "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies"). Such unavailability may exist when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643.

Here, Petitioner alleges the Respondent has been "outright unwilling to provide the Administrative Remedy forms Petitioner is required to utilize to properly seek redress for complaints." Petition at 4. In response, Respondent suggests that the Court should presume this allegation is untrue because it "is belied by the 17 administrative remedies [Petitioner] has filed, as shown in Exhibit A." Res. Mem. at 6 n.2. But the Court must generally assume the truth of a petitioner's alleged facts when ruling on a motion to dismiss. *See Interworks Sys. Inc.*, 604 F.3d at 699. Further, the records do not necessarily support the inference Respondent urges because they show that Petitioner abruptly stopped filing administrative complaints in March of 2021, well

before this petition was filed. *See* Res. Mem. Ex. A at 18. If anything, these records would tend to corroborate Petitioner's allegation that he was prevented from participating in the BOP grievance process prior to filing this habeas petition in April of 2022.

*Constitutional Violations*

Respondent further argues that neither of Petitioner's two claims assert a violation of his constitutional rights. *See* Res. Mem. at 7–9. The Court agrees with Respondent. It is widely accepted "that prisoners have no constitutional right to access a commissary." *Silva*, 2019 WL 859267 at *2; *see also Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop.") Thus, even if Respondent arbitrarily or punitively limited commissary spending, Petitioner has not alleged a deprivation of a liberty interest that could support a Fifth Amendment due process claim. *See Moore v. Hollingsworth*, 492 F. App'x 648, 650 (7th Cir. 2012).

Petitioner also contends that Respondent's limitation on commissary spending violated his equal protection rights. Though not entirely clear, the theory of this claim appears to be that prisoners incarcerated at FCI Danbury have been unconstitutionally subjected to a different commissary spend limit than prisoners incarcerated in other BOP prisons. Pet. Mem. at 7–8. But equal protection principles do not compel governments to implement identical commissary policies for all prison facilities under their control. *See Leatherwood v. Rios*, 705 F. App'x 735, 738–39 (10th Cir. 2017) (higher prices and less selection at commissaries in privately operated prisons, as compared to commissaries in state operated prisons, do not offend the Fourteenth Amendment's Equal Protection Clause). And when prison officials determine that specific operational challenges within a particular prison warrant a particular commissary spend limit, the judiciary should generally defer to this professional judgment. *See Turner v. Safley*, 482 U.S. 78,

89 (1987) ("Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.").

In contrast to commissary access, prisoners *may* have a limited constitutional right to visitation. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners."). But to the extent such a right does exist, it is not clearly established in the Second Circuit. *See Malave v. Weir*, 750 F. App'x 65, 67 (2d Cir. 2019). And it would not be violated by visitation limitations that "bear a rational relation to legitimate penological interests." *Overton*, 539 U.S. at 131–32. Because video conference visitation programs necessarily implicate logistical difficulties and operational expenses, Petitioner cannot plausibly claim that Respondent violated his constitutional rights by declining to permit such visitation methods at FCI Danbury's men's facility.

Plaintiff also suggests that Respondent violated his Fifth Amendment equal protection rights by offering video visitation opportunities to female—but not male—inmates incarcerated at FCI Danbury. *See* Pet. at 4. But, as the Respondent notes, FCI Danbury is comprised of three discrete facilities—a low-security men's facility, a minimum-security women's camp, and a low-security women's satellite prison. *See* Res. Mem. at 8; *see also Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 418 (D. Conn. 2020). And these discrete facilities are not identical in their physical layout nor comparable in their inmate populations. *See Martinez -Brooks*, 459 F. Supp. 3d at 418–19 (noting that the FCI Danbury's men's facility housed significantly more inmates than either of

its women's facilities).² So, Petitioner is not alleging highly-suspect, disparate treatment on the basis of sex, insomuch as he notes that the conditions of confinement within one federal facility differed from that of another. But "as between any two prisons, there will always be stark differences in programing." *Klinger v. Dep't. of Corr.*, 31 F.3d 727, 732 (8th Cir. 1994). And when correctional facilities are segregated by sex, "female inmates can always point out certain ways in which male prisons are 'better' than theirs, just as male inmates can always point out *other* ways in which female prisons are 'better' than theirs." *Id.* Thus, Petitioner cannot establish a violation of his equal protection rights by identifying a single way in which the conditions of confinement at a female facility are "better" than the conditions of confinement at his male facility. *Id.* at 733.

In sum, the Petitioner has not pled plausible violations of his constitutional rights. This, coupled with Petitioner's failure to adequately allege standing, compels the Court to grant Respondent's motion to dismiss.

*Other Pending Motions*

Considering the Court's determination that this Petition must be dismissed for lack of standing and/or for failure to state a claim for which relief may be granted, it is axiomatic that Petitioner's other motions must be and are DENIED. *See e.g., Navarro Carrillo v. New York City Dep't. of Educ.*, No. 20-cv-1657 (ARR) (RLM), 2020 WL 3867137 at *3 (E.D.N.Y. July 9, 2020); *see also Ebomwonyi v. Sea Shipping Line*, 2022 WL 274507, at *2 (2d Cir. 2022) (Summary Order) (finding that after dismissal of a complaint, requests for discovery are moot).³

---

² As of the filing of this Order, BOP's official website reported that FCI Danbury's male facility housed nearly 750 inmates, whereas its two female facilities held roughly 230 inmates combined. *See* Federal Bureau of Prisons, *FCI Danbury*, available at https://www.bop.gov/locations/institutions/dan/.

³ Petitioner did seek permission to supplement his habeas petition, to add allegations that prison officials are now refusing to sell some commissary items without a payment of a "20 to 40 stamp" bribe. SEM at 2–3. When Petitioner complained about this corruption, he alleges that prison officials retaliated by reducing his personal commissary spend limit to just $25 per month. *See id.* at 3. He seeks to add these allegations to his Petition to bring an additional First Amendment retaliation claim. *See id.* at 4–8. A party may move to supplement pleadings under Federal Rule of Civil Procedure 15(d) to plead a "transaction, occurrence or event that happened after the date of the pleading to be

**Conclusion**

The Respondent's motion to dismiss [ECF No. 17] is GRANTED. The Petitioner's motion for preliminary injunction [ECF No. 11] and for leave to supplement petition, discovery, temporary restraining order, preliminary injunction and default judgement [ECF No. 18] are DENIED. The Petition is dismissed with prejudice. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED at Bridgeport, Connecticut, this 26th day of January 2023.

*Kari A. Dooley*
Kari A. Dooley
United States District Judge

---

supplemented." *Id.* And a "district court may grant permission to file a supplemental pleading under Rule 15(d), when it determines that the supplemental facts connect it to the original pleading." *Brown v. Cook*, No. 3:20-cv-985 (KAD), 2020 WL 7188569, at *1 (D. Conn. Dec. 7, 2020) (quotation marks omitted). Although district courts have discretion in determining whether to grant leave to supplement pleadings, leave "should be freely permitted when the supplemental facts connect it to the original pleading." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995). In the now-dismissed petition, Petitioner alleges that the Warden of FCI Danbury violated his Fifth Amendment due process and equal protection rights by: (1) limiting the commissary spend limit applicable to all FCI Danbury inmates to $50 per week and (2) failing to implement video conference visitation protocols at FCI Danbury's men's facility. These claims are not akin to the First Amendment retaliation claim that Petitioner wishes to bring through supplemental pleading. And while Petitioner does passingly suggest that prison officials were partially motivated by the filing of this lawsuit when retaliating against him, *see* SEM at 5, this only makes his proposed First Amendment claim "tangentially related" to his original pleading. *See Brown*, 2020 WL 7188569 at *2 (denying motion to supplement pleading with claims that prison officials retaliated against plaintiff for the filing of his lawsuit). Accordingly, the Court denies Petitioner's request to supplement his petition. This denial is without prejudice to Petitioner's right to bring First Amendment retaliation claims against prison officials in a separate petition.